UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE NEWELL, as mother and next best friend of JOSEPH NEWELL, a minor;  )))) | |
| Plaintiff, ) | No. 07 C 2650 |
| ) | |
| vs. ) | |
| ) | Judge Der-Yeghiayan |
| CITY OF CHICAGO, ) A Municipal Corporation; and ) Chicago Police Officers ) MATT WEBER, Star #20489; ) FRANK QUINN III, Star # 15331; and ) EDWARD FINERAN JR., Star # 13107; ) ) | Magistrate Judge Keys<br><br><br><br><br>Jury Demand |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

**Parties**

4. Plaintiff is the mother of JOSEPH NEWELL, is a citizen of the United States, and a resident of Chicago.

5. JOSEPH NEWELL is African-American. On the date of the incident alleged below, JOSEPH NEWELL was 15 years-old.

6. Defendant MATT WEBER is a Chicago police officer who was off-duty at the time of the incident described below.

7. Defendants FRANK QUINN III and EDWARD FINERAN JR., are Chicago

police officers who were on-duty at the time of the incident described below.

8. All of the individual Defendants are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

9. The Defendant-Officers are sued in their individual capacities.

10. The CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

**Facts**

11. On April 13, 2007, at about 10:00 p.m., JOSEPH NEWELL was with a group of friends, including Dillon and Matthew, at a park on 103rd Street in the Beverly neighborhood of the city of Chicago.

12. After about 30 minutes, JOSEPH and his friends (about 7 of them) left the park to go to their homes.

13. As they were walking from the park, JOSEPH, Dillon and Matthew were throwing around a football.

14. On one occasion, the football was thrown to JOSEPH and he missed it. The football ended up under a SUV vehicle in a driveway near 98th and Hamilton.

15. JOSEPH retrieved the football from under the car. Then JOSEPH re-joined his friends, and they began walking and throwing the football around.

16. JOSEPH and some of his friends split up when they reached 96th and Hamilton. From there, JOSEPH continued to walk with Matthew and Dillon; together they walked to 94th and Hamilton.

17. At or near 94th and Hamilton, without provocation or justification, Defendant WEBER approached JOSEPH from behind and punched JOSEPH in the mouth.

18. After the punch, WEBER tackled JOSEPH to the ground.

19. After JOSEPH was on the ground, WEBER put JOSEPH in a chokehold and choked JOSEPH.

20. WEBER told JOSEPH that he was a police officer and JOSEPH was under arrest.

21. JOSEPH was under arrest, and not free to leave.

22. WEBER handcuffed JOSEPH.

23. JOSEPH smelled alcohol on WEBER's breath

24. JOSEPH was extremely frightened and scared.

25. After JOSEPH was in handcuffs, JOSEPH told his friend Matthew to call 911.

26. Matthew called 911.

27. During the incident, WEBER asked the boys, "Which one of you did it?"

28. The police arrived – Defendants FRANK QUINN III and EDWARD FINERAN JR.

29. QUINN and FINERAN got out of their police car with their clubs out and ready for action.

30. WEBER showed his badge to QUINN and FINERAN.

31. Without provocation or justification, QUINN and FINERAN violently grabbed JOSEPH and threw him in their police car. JOSEPH was still in handcuffs.

32. Later, before taking JOSEPH from the scene, WEBER's handcuffs were removed from JOSEPH, and replaced by handcuffs from QUINN or FINERAN.

33. Neither QUINN nor FINERAN asked JOSEPH for his version of events.

34. Neither QUINN nor FINERAN interviewed, or even attempted to interview, Matthew or Dillon.

35. Before leaving to take JOSEPH to the police station, JOSEPH's friends asked the Defendant-Officers if they could go with JOSEPH to the police station, they were told no.

36. JOSEPH was taken to the 22nd district police station.

37. At the station, JOSEPH asked several times if he could call his mother. The police would not allow JOSEPH to call his mother.

38. At the station, JOSEPH was kept in handcuffs for about one hour, and incarcerated in a cell.

39. JOSEPH was fingerprinted, and his mugshot was taken.

40. JOSEPH was told that he had to wait to meet with a youth officer.

41. A youth officer did not meet with JOSEPH for several hours.

42. Earlier, when Defendant WEBER assaulted and arrested JOSEPH, Plaintiff JACQUELINE NEWELL was at home. She received a phone call from Matthew – one of JOSEPH's friends who was with JOSEPH when WEBER attacked him.

43. In the phone conversation, Matthew told JACQUELINE that a man had jumped JOSEPH.

-3-

44. Matthew also explained that the officers had said that they might take JOSEPH home, and they might take him to the police station.

45. JACQUELINE asked Matthew to find out what they were going to do, and call back.

46. Seconds later, JACQUELINE called Matthew. Matthew said that JOSEPH and the police officers had left, and he thought they were going to the police station.

47. JACQUELINE left her home, and went to the 22nd district police station. She arrived there at about 11:00 p.m.

48. When she got there, JACQUELINE told an officer that she was there to get her son.

49. JACQUELINE was told that her son was under arrest, and they had to wait for a youth officer.

50. JACQUELINE asked why her son was in custody.

51. The officer told JACQUELINE that JOSEPH was arrested for trespassing and trying to steal a hubcap.

52. JACQUELINE said that her son would never steal a hubcap.

53. While waiting, JACQUELINE repeatedly asked to see her son, but was told that she could not.

54. JACQUELINE was repeatedly told to sit and wait.

55. While waiting, JACQUELINE repeatedly asked to see her son and asked why he is being held. She was told that JOSEPH was being held regarding an incident that involved an off-duty police officer. When JACQUELINE asked for more information than that, she was told that she would have her day in court.

56. JOSEPH was released from police custody at about 2:15 a.m.

57. Upon information and belief, JOSEPH was charged with criminal trespass to land.

58. After JOSEPH was released, he received medical attention for the injuries he received from the above-described use of excessive force.

59. The charges against JOSEPH were dropped and dismissed in juvenile court on May 7, 2007.

60. Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to JOSEPH's rights.

61. As a direct and proximate result of the acts of the Defendants described above, JOSEPH has suffered and continues to suffer damages including loss of physical liberty, emotional distress, physical pain and suffering, mental anguish and humiliation, and monetary losses including medical expenses and attorneys' fees.

## COUNT I
### (42 U.S.C. § 1983 – False Arrest/Imprisonment)

62. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

63. Without provocation, Defendant WEBER attacked JOSEPH, punched him, and placed him in handcuffs.

64. JOSEPH was under arrest and not free to leave.

65. WEBER did not have an arrest warrant, probable cause, reasonable suspicion, or any other lawful basis to arrest or detain JOESPH.

66. The actions of WEBER in arresting JOSEPH without any legal justification or probable cause, violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against WEBER;
b) Award Plaintiff compensatory and punitive damages, as determined at trial;
c) Award Plaintiff attorneys' fees and costs;
d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Excessive Force)

67. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

68. Without provocation, MATT WEBER attacked JOSEPH and punched him.

69. The actions of WEBER violated JOSEPH's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against WEBER;

b)     Award Plaintiff compensatory and punitive damages, as determined at trial;

c)     Award Plaintiff attorneys' fees and costs;

d)     Award such other and additional relief that this Honorable Court deems just and equitable.

### COUNT III
### (42 U.S.C. § 1983 – Excessive Force)

70.     Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

71.     Defendant-Officers QUINN and/or FINERAN violently grabbed JOSEPH and threw him into their police car.

72.     The actions of said Defendant-Officers violated JOSEPH's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against said Defendant-Officers;

b)     Award Plaintiff compensatory and punitive damages, as determined at trial;

c)     Award Plaintiff attorneys' fees and costs;

d)     Award such other and additional relief that this Honorable Court deems just and equitable.

### COUNT IV
### (State Law Claim for Malicious Prosecution)

73.     Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

74.     Charges were brought against JOSEPH for trespassing.

75.     There was not probable cause for such charges.

76.     The charges were dismissed.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)     Enter judgment against WEBER;

b)     Award Plaintiff compensatory and punitive damages, as determined at trial;

c)     Award Plaintiff costs;

    d)    Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (State Law Claim for Intentional Infliction of Emotional Distress)

77.    Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

78.    Defendant-Officers' conduct was extreme and outrageous.

79.    Defendant-Officers intended to cause JOSEPH severe emotional distress, or knew that there was a high probability that their conduct would cause JOSEPH severe emotional distress.

80.    Defendant-Officers' conduct caused JOSEPH severe emotional distress.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendant-Officers;

b)    Award Plaintiff compensatory and punitive damages, as determined at trial;

c)    Award Plaintiff costs;

d)    Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VIII
### (State Law *Respondeat Superior* Claim)

81.    The acts of the individual Defendant-Officers described in the supplementary state claims specified above were willful and wanton, and committed in the scope of employment.

82.    Pursuant to *respondeat superior*, Defendant CITY OF CHICAGO, as principal, is liable for its agents' actions.

WHEREFORE, Plaintiff demands judgment against the CITY OF CHICAGO, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IX
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

83.    Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

84. The acts of the individual Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

85. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Plaintiff demands trial by jury on all counts.**

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595